# United States District Court

_____MIDDLE_____ DISTRICT OF _____ALABAMA_____

UNITED STATES OF AMERICA

v.

MICHAEL GIBSON

CRIMINAL COMPLAINT

CASE NUMBER: 2:07mj 18-WC

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __February 14, 2007__, in __Montgomery__ county and elsewhere within the __Middle__ District of __Alabama__ defendant(s), (Track Statutory Language of Offense)

knowingly and intentionally distributing cocaine base ("crack"),
a Schedule II Controlled Substance,

in violation of Title __21__ United States Code, Section(s) __841(a)(1)__. I further state that I am a(n) __DEA Special Agent__ and that this complaint is based on the following facts:
Official Title

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED BY REFERENCE

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

February 15, 2007                                at    Montgomery, Alabama
Date                                                          City and State

Wallace Capel, Jr., U. S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

UNITED STATES DISTRICT
MIDDLE DISTRICT OF ALABAMA
MONTGOMERY, ALABAMA


**AFFIDAVIT**


I, Bret Hamilton, having appeared before the undersigned United States Magistrate, and having been duly sworn, deposes, and states:

I am a Special Agent with the Drug Enforcement Administration assigned to the Montgomery District Office. I have been a DEA Agent since June 1995. Prior to 1995, I was a police officer with the Charlotte-Mecklenburg Police Department for a period of approximately three years. During the course of my career, I have written and executed numerous search and seizure warrants for narcotics, dangerous drugs, records, books, and proceeds derived as a result of this illicit activity. Further, I have arrested numerous individuals for violations of State and Federal narcotics statutes. I have attended and successfully completed training concerning narcotics trafficking, conspiracies, and money laundering methods that narcotics traffickers employ. The following information has been obtained either through personal observation or from other law enforcement officials.

On 01-18-2007, your affiant and TFA Joe Herman interviewed a Confidential Source who stated that for the past couple of years he/she had purchased crack cocaine from an individual named Michael GIBSON. The CS explained that he/she normally purchased two and a quarter ounces of cocaine base from GIBSON every two to three weeks. According to the CS, the most he/she has ever purchased was four and a half ounces of crack for the purchase price of $2,700.00.

At approximately 5:05 pm, your affiant instructed the CS to call GIBSON and arrange to purchase at least four and a half ounces of crack cocaine. The CS called (334)414-7393 and spoke with an individual who the CS said was GIBSON. The CS told GIBSON that he/she had a friend who wanted to purchase nine ounces and asked how much it would cost. GIBSON stated that nine ounces would cost $5,250.00 and four and half ounces would cost $2,650.00. The CS and

GIBSON agreed to talk later to finalize the transaction. This call was monitored and recorded by your affiant and SA Neill Thompson.

On 02-13-2007 agents of the DEA met with the CS again and instructed him/her to call Michael GIBSON yet again and arrange to purchase the cocaine base. Between 1:00 pm and 2:00 pm, three calls were made by the CS to GIBSON'S cell phone, (334) 414-7393. During these calls, GIBSON informed the CS that he no longer had nine ounces of cocaine as stated in a call the previous day. Furthermore, GIBSON stated he had approximately six ounces left and that it was "going fast". GIBSON stated that he was hoping to be re-supplied soon. The CS told GIBSON that he wanted to purchase cocaine base and GIBSON explained that he would have it prepared for the CS. Based on the conversations between the CS and GIBSON it was decided to attempt to purchase the cocaine base from GIBSON the following day.

On 02-14-2007 the CS again met with your affiant and SA Thompson at approximately 4:40 pm when the CS explained that he/she had spoken with GIBSON earlier and that GIBSON had stated he was preparing four and a half ounces of cocaine base for the CS and was hoping to have another four and a half ounces before they met. At approximately 4:50 pm the CS' cell phone rang displaying GIBSON'S cell phone information. The CS answered the call as your affiant monitored the conversation. GIBSON asked the CS where he was and how long it would be before they could meet. The CS stated about forty-five minutes and then asked if "it" was ready. GIBSON stated, "It's coming out of the pot now".

At approximately 5:00 pm the CS and his/her vehicle was searched for drugs, weapons, large sums of money and other contraband. None were found. The CS was equipped with a recording device and an audio transmitter so that his/her conversations could be monitored. The CS was given $2,550.00 of recorded official authorized funds to be used to purchase the cocaine base.

At approximately 5:12 pm the CS and agents drove directly to the Pacecar Gas Station located at the intersection of Narrow Lane Road and Southern Blvd in Montgomery, AL. This is the location that the CS and GIBSON had agreed to meet and conduct the transaction. The CS parked and waited for GIBSON to arrive while agents

established surveillance around the business. After arriving, the CS could be heard via the audio transmitter calling GIBSON. The CS stated that he/she would be at the meet location in four minutes and GIBSON stated that he was on his way.

At approximately 5:50 pm agents observed GIBSON arrive driving a black 1997 Honda Accord with Alabama License plate 45A478J. GIBSON exited his vehicle and entered the passenger side of the CS' vehicle. Via the audio transmitter the CS and GIBSON could be heard discussing the cocaine base. The CS also gave a prearranged signal meaning that GIBSON had given him/her the drugs.

At approximately 5:52 pm, agents approached GIBSON as he was exiting the CS' vehicle. GIBSON was taken into custody without incident. After searching GIBSON'S person, the $2,550.00 of OAF given to the CS was located in GIBSON'S right paints pocket. The CS also relinquished custody of a clear plastic bag containing an off white granular substance which was later field tested and indicated positive for cocaine. The CS explained that GIBSON had just given him/her the bag. GIBSON'S cell phone was also located. It was determined its assigned number was (334)414-7393, the number used by the CS to contact GIBSON.

_____
J. BRET HAMILTON, Special Agent
Drug Enforcement Administration


Sworn to and subscribed in my presence
this 15th day of February, 2007.

_____
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE